ANNIE KELLEY, administratrix, *vs.* THE FIRST NATIONAL BANK OF BOSTON, executor.

ANNIE KELLEY, administratrix, *vs.* SAME.

ANNIE KELLEY, administratrix, *vs.* SAME.

Suffolk. October 3, 4, 1932. — November 29, 1932.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Negligence*, Of one owning or controlling real estate, Independent contractor. *Landlord and Tenant*, Care of premises.

At the trial of an action by an administrator for the conscious suffering and death of his intestate, who for some years had been a tenant at will of an apartment in a building of the defendant, there was evidence that

the defendant was in control of a shaft, made partly of wood, which formerly had been used for a dumb waiter and down which, to the defendant's knowledge, the tenants of the building were accustomed to throw rubbish for removal by the defendant's janitor; that an independent contractor hired by the defendant's agent ran electric wires to certain apartments through the inside of the shaft, the wires being installed and insulated in such a manner that a sharp, heavy blow might cause their casing to penetrate the insulation and create a short circuit, whereby molten metal might drop into the rubbish below, setting it on fire; that the contractor was not told that heavy objects were often thrown down the shaft; that a fire, which caused the death of the intestate, started in the shaft about a week or two weeks after the wires had been installed; and that, after the fire, the wires were found with only one break, indicating that there had been a short circuit or a ground at that place, which had burned the casing, rather than a burning from external flames. *Held*, that

(1) The duty of the defendant was to use reasonable care to keep the shaft in as safe a condition as it had been at the time of the letting;

(2) The dangerous condition of the shaft could have been discovered by ordinary inspection on the part of the defendant's agent, upon whose approval the defendant had paid the contractor;

(3) Although the wiring was done by an independent contractor, a finding was warranted that the defendant was negligent;

(4) A verdict for the plaintiff was warranted.

THREE ACTIONS OF TORT for the conscious suffering and deaths of Walter Donohue, Elizabeth A. Donohue and Elizabeth B. Donohue. Writs dated June 14, 1928.

The actions were tried together in the Superior Court before *Gray*, J. Material evidence is stated in the opinion. The judge denied a motion by the defendant in each action that a verdict be ordered in its favor upon each count of the declaration. There was a verdict for the plaintiff in each action upon a count for conscious suffering in the sum of $900 and upon a count for death in the sum of $2,184. The defendant alleged exceptions in each action. The plaintiff also alleged exceptions in each action, but stated that she would waive them if the defendant's exceptions were overruled.

*E. Field*, (*R. H. Field* with him,) for the defendant.

*J. Finnegan*, (*F. R. Walsh* with him,) for the plaintiffs.

LUMMUS, J. These are three actions of tort to recover for the conscious suffering and death of the plaintiff's three

intestates, as the result of a fire at about one o'clock in the morning of March 20, 1928, in an apartment house controlled by the defendant as executor or trustee under the will of Lucian J. Fosdick, in which the plaintiff's intestates for some years had occupied an apartment as tenants at will. A motion for a directed verdict as to each count of the declaration, one count being for death and the other for conscious suffering, was denied in each case, subject to the defendant's exception. The jury returned a verdict for the plaintiff in each case, upon each count.

The plaintiff contended that the fire was caused by the negligence of the defendant in allowing electric light wires to be improperly installed in a shaft, made in part of wood, formerly used for a dumb waiter, and in allowing that shaft to be used for the deposit of rubbish after the wires were installed.

There was evidence tending to show the following facts. The shaft was in the control of the defendant. All the tenants were accustomed, to the knowledge of the agent of the defendant, to throw down the shaft rubbish, including papers, cardboard boxes, clothing, bottles, broken dishes and short pieces of wood. No other means of disposal of rubbish was provided. The defendant's janitor was instructed and was accustomed to clean out the shaft and dispose of the rubbish. About three weeks before the fire the defendant's agent engaged a contractor to connect certain apartments with electricity, and the contractor without special directions ran the wires on the inside of the shaft. The wires used had a copper wire as the core, with insulation around that, and outside of the insulation was a metal casing wound spirally, without any opening. The wires were put in rather loosely, and were not laid close to the side of the shaft. The use of such wires, instead of wires enclosed in solid tubes, was not proper in a shaft where heavy objects thrown down the shaft might hit the wires. The contractor was not told that heavy objects were often thrown down the shaft. A sharp, heavy blow might cause the metal casing to penetrate the insulation and the copper wire, creating a short circuit or ground, and

an arc of flame, whereby the metal casing might melt and the molten metal might drop into the rubbish below, setting it on fire.

The fire started in the shaft. After the fire, the wires were found blackened, the insulation was burned, and there was one break in the wire with a loose end hanging. Partly burned rubbish, empty vegetable cans and broken bottles were found in the bottom of the shaft. An expert testified that if the metal casing of the wire was found broken in only one place after the fire, that indicated that there had been a short circuit or a ground at that place, which burned the casing, rather than a burning from external flames.

The duty of the landlord, applicable to this case, was to use reasonable care to keep the shaft as safe as it was at the time of the letting. *Angevine* v. *Hewitson,* 235 Mass. 126. *Grady* v. *Gardiner,* 272 Mass. 491. *Murray* v. *Lincoln,* 277 Mass. 557. Although the work of wiring was done by an independent contractor, the shaft was in the control of the defendant, and its dangerous condition could have been discovered at any time during the week or two weeks between the completion of the work and the fire, by ordinary inspection on the part of the defendant's agent upon whose approval the defendant paid the contractor. See *Buldra* v. *Henin,* 212 Mass. 275; *Flanagan* v. *Welch,* 220 Mass. 186, 192, 193; *Woodman* v. *Shepard,* 238 Mass. 196; *Sciolaro* v. *Asch,* 198 N. Y. 77; *Hyman* v. *Barrett,* 224 N. Y. 436. The case was rightly submitted to the jury. We need not consider the plaintiff's exceptions, for they have been waived.

*Defendant's exceptions overruled.*