[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 84 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 85 
Defendants, C.O. Osborn, doing business as Nob Hill Apartments, and Cincinnati Insurance Company, appeal from denial of their motion for a new trial following a jury verdict against them in favor of plaintiffs, Sarah Helen Brown and State Farm Fire and Casualty Company in Case 77-50, and for Sandy F. Soverow for the use and benefit of Allstate Insurance Company in Case 77-202, and for defendant Brown in Case 77-203. We reverse and remand Cases 77-50 and 77-202, and affirm Case 77-203.
In late 1972, plaintiffs Brown and Soverow agreed to rent separate apartments from defendant Osborn in Nob Hill Apartments in Birmingham. Because their single apartments were not yet completed, Brown and Soverow agreed to rent a larger apartment in the complex from defendant Osborn until their separate apartments were finished. On December 30, 1972, a fire occurred in the apartment shortly after Brown had cooked some leftover livers and gizzards (for her dogs) on the electric stove and had left the apartment. Plaintiffs' property in the apartment was greatly damaged or destroyed.
Three separate suits, which were consolidated for trial, resulted. In the first suit, plaintiff Brown and her insurer, State Farm Fire and Casualty, sought damages from the owner of the complex, Osborn, for negligence and breach of contract. In the second suit, plaintiff Soverow, suing on behalf of her insurer, Allstate Insurance Company, sued her roommate, Brown, for negligence and Osborn for negligence and breach of contract. In the third suit, Cincinnati Insurance Company, Osborn's insurer, claimed damages against Brown for her negligence. The jury returned a verdict in favor of Brown and State Farm (plaintiffs in the first suit) and Allstate and Soverow (plaintiffs in the second suit) against defendant Osborn, but in favor of Brown (defendant in the second and third suits brought by Soverow, Allstate and Cincinnati). After Osborn's and Cincinnati's motion for judgment notwithstanding the verdict and new trial was overruled, this appeal followed.
Appellants' first contention is that reversible error was committed when the attorney representing plaintiffs State Farm and Brown stated to the jury, ". . . I would like to know where the analysis is that was run on the stove by Cincinnati Insurance." They contend there was no factual basis for the attorney's statement because there was no proof any analysis was run, and it thus constituted reversible error. We cannot agree. Appellees argue the evidence shows that Cincinnati took the stove and it may be inferred an analysis was run. *Page 86 
It is, of course, true that, in argument to the jury, counsel may not argue as a fact that which is not a fact in evidence, but he may state or comment on all proper inferences from the evidence and may draw conclusions from the evidence based on his own reasoning. Teele v. Gravlee, 294 Ala. 126,313 So.2d 169 (1975). It it also true that in the matter of an attorney's argument to the jury, much must be left to the enlightened judgment of the trial court, with presumptions in favor of its ruling. Adams v. State, 291 Ala. 224, 279 So.2d 488 (1973). We need not decide whether the argument constituted legitimate inference or not. For, to justify reversal because of an attorney's argument to the jury, this Court must conclude that substantial prejudice has resulted. Teele v. Gravlee, supra. Here we do not find that any prejudicial error has resulted, in large measure, because of the trial court's prompt and effective admonition to the jury following defense counsel's objection to the statement, viz:
 "THE COURT: Just a minute, Gentlemen. Let's keep it cool. Ladies and Gentlemen, I don't recall whether there was any evidence about any analysis or not. My recollection is that there wasn't. I will say this to you, you rely upon your recollection as to whether there was or was not, and it's not any duty on anyone to bring it here. Each of them has the right to discover and take depositions, as you have heard about, and as to whether or not the parties are equally available to — the evidence is equally available. With that instruction and admonition, let's keep things within the realm of the evidence here and not have any outbursts." (Emphasis added.)
Appellants next contend that the trial court erred in admitting photographs made at the scene of the fire (which indicate that the circuit breakers were in the "on" position) because they were not authenticated and were not made soon enough after the fire. We must disagree.
A picture is not admissible unless a witness testifies that the picture as exhibited accurately reproduces the objects or actions which he observed. International Union, UAW v. Russell,264 Ala. 456, 88 So.2d 175 (1956), aff'd, 356 U.S. 634,78 S.Ct. 932, 2 L.Ed.2d 1030 (1958).
But, the determination as to the sufficiency of the preliminary proofs offered to identify the photograph or to show that it is an accurate representation of the objects which it purports to portray is a matter within the sound discretion of the trial court and will not be reviewable except for gross abuse. Moon v. Nolen, 294 Ala. 454, 318 So.2d 690 (1975).
After some confusion in her earlier testimony, Brown finally testified that the picture was taken, to the best of her knowledge, on the same night as the fire. She further testified that, to the best of her knowledge, no change was made in any of the positions of the switches, and that the pictures substantially depicted the condition of the circuit breaker at the time the picture was taken. Thus, we think the pictures were properly authenticated, and there was no error in admitting them into evidence.
Appellants next maintain that the trial court erred in allowing an expert witness to respond to hypothetical questions which called for his opinion as to whether a fire would ignite if a staple was put into a hot wire, causing a short circuit, and the circuit breaker was not operating properly. Appellants contend there was no evidence introduced at any time regarding the malfunction of the circuit breaker, and thus the question was improper. We cannot agree.
The frame and substance of hypothetical questions to expert witnesses is a matter largely committed to the sound discretion of the trial court. Dyer v. Traeger, 357 So.2d 328 (Ala. 1978). We find no abuse of the trial judge's discretion here.
Initially, the trial judge sustained an objection to the question because no evidence had been offered to prove the circuit breaker had malfunctioned and because appellee's attorney was unable to represent to the court that evidence would be offered on *Page 87 
that point. However, the trial judge later allowed the expert to so testify. In so doing, the judge made the following comment:
 "Based upon some twenty-some-odd years as a fireman, sir, and I believe you have some knowledge of electricity, I will let you give your best judgment as to whether that could or would or would not cause a fire."
The expert witness then testified as follows: "I would say under the right circumstances, everything being right it's possible." We do not think that allowance of this testimony was an abuse of discretion.
Appellants also contend that the trial judge erred in refusing to give two of their requested jury instructions regarding inferences of fact, i.e., APJI 15.00 and 15.01. Although these charges appear to contain correct statements of the law, we think the failure to give these charges, if error, was harmless error. The charges, moreover, were "abstract."Mobile Press Register, Inc. v. Padgett, 285 Ala. 463,233 So.2d 472 (1970).
Appellants' main contention is that Osborn as landlord did not breach any obligation or duty to the appellees. We agree and hold that submission of the case to the jury against Osborn constituted reversible error.
A landlord, in the absence of a covenant to repair, is liable only for latent defects of which he knows at the time the lease is made and which he conceals from the tenant. Chambers v.Buettner, 295 Ala. 8, 321 So.2d 650 (1975). However, appellees' able and resourceful counsel advance five theories to support recovery which are said to take this case out of the general rule. We will consider these theories seriatim.
The first theory asserted for recovery is that the two women were invitees, rather than tenants, and thus were owed a higher standard of care. The trial court charged the jury that it might find, under the evidence, that the two women were invitees. This was error.
An invitee is a visitor, a transient who enters property at the express or implied invitation of the owner or occupier for the material or commercial benefit of the occupier. Autry v.Roebuck Park Baptist Church, 285 Ala. 76, 229 So.2d 469 (1969). A tenant, on the other hand, does not merely visit, but acquires an interest in the property, including the exclusive legal possession of the leased premises. See Rehfuss v.McAndrew, 250 Ala. 55, 33 So.2d 16 (1947).
We think the evidence clearly establishes a landlord-tenant relationship. The two women were not visitors, but were parties who leased an apartment, albeit temporarily, obtained possession, and paid rent. The payment and receipt of rent has been held to establish the relationship of landlord and tenant.Hackney v. Griffin, 244 Ala. 360, 13 So.2d 772 (1943). Also, the word "apartment," which has been used by all the parties to refer to the leased premises, signifies in its ordinary connotation that the occupant has the right to exclusive legal possession and is a tenant. Stowe v. Fritzie Hotels, Inc.,44 Cal.2d 416, 282 P.2d 890 (1955).
The mere fact that some of the construction foremen used pass keys to enter the apartment in order to perform some final finishing up did not convert Brown's and Soverow's status from tenants to invitees, since it does not appear that the entry of these construction workers was under a permanent right of entry retained by the landlord. Moreover, the fact that the resident manager and the bookkeeper possessed pass keys, in and of itself, does not prevent the establishment of a landlord-tenant status, since there is no evidence that the retention of the keys was pursuant to the landlord's control, care or supervision of the apartment.
Appellees suggest a second theory — that the two women werelodgers — to whom a landowner owes a duty of reasonable care not to injure. A lodger is one who has the use of property without actual or exclusive possession, such as one who lives in a spare room of a house whose owner *Page 88 
retains direct control, supervision or care of the entire house. Rehfuss v. McAndrew, supra. We think the evidence clearly shows a lease of the apartment with a transfer of possession, control and care to the lessees, who were tenants and not lodgers.
A third theory advanced by appellees is that the landlord, Osborn, retained control of the electrical wiring of the apartment complex and was under a duty to exercise reasonable care to maintain the wiring. It is claimed that the jury could have found a malfunction of the electrical system to be the proximate cause of the fire.
The only case in which this Court has held that a landlord retained control over the electrical wiring of a leased premises, Pearce v. Sloss-Sheffield Steel Iron Co., 211 Ala. 639,101 So. 585 (1924), differs from this case in several respects. There, the lessor contracted with the State to supply light, heat and water to the leased building, which was to be used as a hospital. Moreover, the lessor generated its own electricity which was delivered over its own private line. The Court held that the electric wires in the building were essential to the furnishing of electricity under the contract, so that the lessor necessarily retained control over the wiring.
Appellees cite several other cases to support their theory that a landlord retains control over the electrical system of an apartment building. Gladden v. Walker Dunlop, 83 U.S.App.D.C. 224, 168 F.2d 321 (1948); Kelley v. First NationalBank, 281 Mass. 169, 183 N.E. 174 (1932); Lipsitz v. Schechter,377 Mich. 685, 142 N.W.2d 1 (1966); Niman v. Plaza House, Inc.,471 S.W.2d 207 (Mo. 1971); Green v. Kahn, 391 S.W.2d 269 (Mo. 1965); Thompson v. Paseo Manor South, Inc., 331 S.W.2d 1
(Kansas City, Mo., Ct.App. 1959); Fleischer v. Dworsky,90 Misc. 628, 153 N.Y.S. 951 (App.T. 1915); O'Connor v. Andrews,81 Tex. 28, 16 S.W. 628 (1891). The principle established by these cases is expressed in Gladden, supra, as follows:
 "It is familiar law that a landlord who keeps control over parts of an apartment house must use reasonable care for their safety. We have applied this principle to the lighting of a common entrance stairway. With regard to plumbing and heating systems, the principle extends to operative fixtures in the apartments leased to tenants and operation through them. We think the principle is equally broad with regard to the electrical system." (Footnotes omitted.)
83 U.S.App.D.C. at 225, 168 F.2d at 322.
There is some evidence that Osborn did retain control over the electrical wiring. When a tenant had trouble with the wiring, he was to notify the landlord, who would then send a maintenance man to examine the problem. If the problem was the responsibility of the electrical contractor, he would be called in to fix it. Otherwise, one of Osborn's employees would repair the wiring. The tenants were not to do any wiring work themselves.
Even if this is enough evidence to establish control, this theory would still not support a recovery under the evidence. A lessor's liability under this theory is based upon his failure to exercise reasonable care when such exercise would have disclosed a dangerous condition and the risk involved, and the lessor could have made the condition safe. This is the rule embodied in the Restatement (Second) of Torts §§ 360-61 (1965). See Chambers v. Buettner, supra.
Knowledge, either actual or constructive, must be present in order to hold the landlord liable in a retained control situation. "The landlord is not an insurer of the safety of the system, but is liable only for action or inaction that is negligent in view of what he or his representatives know or reasonably should know." Gladden v. Walker Dunlop, supra, 83 U.S.App.D.C. at 225, 168 F.2d at 322.
Liability in each of the cases cited by appellees to support their retained control theory arose from the landlord's actual knowledge of a dangerous condition through complaints by the tenants (Gladden, Fleischer) or his own observations (Green), or constructive notice due to the open nature of the condition and the opportunity *Page 89 
of discovery (Kelley, Lipsitz, Thompson, O'Connor). Niman was a res ipsa loquitur case in which the question of thelandlord's knowledge was deemed to be merged with the question of his control.
In the present case, the alleged dangerous condition was a staple driven through an electric wire located in a wall space of the damaged apartment. The wire was covered by sheetrock, and wooden cabinets were then hung on the wall. We have not found in the record evidence that Osborn, in the exercise of reasonable care, could have discovered the dangerous condition or the risk involved after the sheetrock had covered the wiring. There were no complaints made to Osborn by Brown or Soverow about any trouble with the electrical system.
However, appellees contend that Osborn or his employees may have had an opportunity to see the wiring before the sheetrock was hung. The record does show that Osborn or his employees entered some apartments in order to check the progress of the work performed by the contractors and subcontractors. We have not found any evidence to establish that Osborn, or any of his employees, ever saw or inspected the wiring in the apartment in question before the sheetrock was installed, nor does the record show that such an inspection would, in the exercise of reasonable care, have alerted Osborn to any dangerous condition in the wiring or to any risk involved.
The fourth theory of appellees is that the landlord would be liable either for negligent inspection of the electrical wiring during construction or, under respondeat superior, fornegligent construction in the installation of the wiring.
A landlord is under no duty to inspect his premises for latent defects. James Son, Inc. v. Breedlove, 347 So.2d 1330
(Ala. 1977). But, as a general rule, when one assumes a duty requiring skill or care, such a duty must be performed with reasonable care. Standifer v. Pate, 291 Ala. 434, 282 So.2d 261
(1973). In Beasley v. MacDonald Engineering Co., 287 Ala. 189,249 So.2d 844 (1971), an insurer who made safety inspections of a business premises was held to be under a duty to third parties to inspect with reasonable care.
The Restatement (Second) of Torts § 323 (1965) states this rule as to the liability for a negligent undertaking as follows:
 "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
 (a) his failure to exercise such care increases the risk of such harm, or
 (b) the harm is suffered because of the other's reliance upon the undertaking."
We have found no evidence to support the theory negligent inspection, i.e., that the landlord ever assumed a duty to inspect the wiring system for safety. Thus, the instant case is to be distinguished from Beasley, supra, where the defendant insurance company undertook safety inspections as part of an insurance agreement.
An examination of the record reveals that Osborn's inspections were not safety inspections, but rather were checks on the progress of construction by the contractor and various subcontractors undertaken to see that they were fulfilling their contractual obligations according to the plans and specifications. There was no rendering of services to another, since Osborn presumably acted for his own benefit. The record does not show that Brown or Soverow relied upon any undertaking by Osborn, nor have we found any testimony from which one could infer that the risk of harm had been increased by an undertaking on Osborn's part. In short, there simply was no "undertaking" by Osborn.
An owner-landlord should not be held liable for negligent inspection merely because he checked the progress of construction. To follow appellees' argument to its ultimate conclusion would reward the lax and penalize the diligent
owner. *Page 90 
In order to recover under respondeat superior, appellees would have to establish the relationship of master and servant or employer and employee. We have found no evidence to support this theory.
 "To recover against a defendant upon the theory of respondeat superior, it is necessary for the plaintiff to establish the status of master and servant and that the act done was within the scope of the servant's employment. United States Steel Co. v. Butler, 260 Ala. 190, 69 So.2d 685.
 "It is the reserved right of control rather than its actual exercise that furnishes the true test of whether the relation between the parties is that of an independent contractor or of employer and employee — master and servant. Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757.
 "For one to be an employee, the other party must retain the right to direct the manner in which the business shall be done as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Weeks v. C.L. Dickert Lumber Co., 270 Ala. 713, 121 So.2d 894 and cases there cited."
Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 398,232 So.2d 638, 640 (1970). (Emphasis supplied.)
The record discloses that Osborn did not direct the manner in which the various contractors performed their work; he merely inspected the results to determine if performed in accordance with the plans. There is no evidence of a reserved right of control over the installation of the electric wiring.
Appellees' fifth theory is that certain statements made by Osborn's rental agent amounted to an express warranty ofhabitability or a covenant to provide a safe place to live. We find no such warranty or covenant arising from the agent's statement that the temporary apartment was "liveable." In the context in which it was made, this expression simply indicated (as Brown testified) that "there was some work to be done on it to finish it out, but it was available for us to move into * * *."
Finally, appellees urge us either to expand the standard of care owed by a landlord to a tenant or to recognize the existence of an implied warranty of habitability in leases of new residential apartments. This Court expressly declines to do so. See Bevis v. L L Services, 360 So.2d 296 (Ala. 1978).
For the foregoing reasons relating to appellant Osborn's liability, Cases 77-50 and 77-202 are due to be reversed and remanded for a new trial. There being no cross-appeal from the verdict for defendant Brown in Case 77-202, no issue to Brown is before us.
All of appellants' contentions relating to Cincinnati Insurance Company's suit against Brown having been answered in favor of appellee Brown, Case 77-203 is due to be affirmed.
CASES 77-50 AND 77-202 REVERSED AND REMANDED.
CASE 77-203 AFFIRMED.
FAULKNER, ALMON, SHORES and EMBRY, JJ., concur.