[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 205 
Appellant was indicted for the unlawful killing of Clyde Ottis Alverson, III by shooting him with a shotgun. A jury found appellant guilty of first degree manslaughter and fixed his punishment at ten years in the State penitentiary. After sentence was imposed appellant gave notice of appeal.
The State's evidence was sufficient to prove appellant's guilt beyond any reasonable doubt. Appellant's sole contention in defense, that the shooting was accidental, was rejected by the jury. It is not the function of this Court to reweigh the evidence, but to review the evidence presented in the light most favorable to the State. Bass v. State, 55 Ala. App. 88,313 So.2d 208 (1975).
Briefly, the State's evidence revealed that shortly after midnight on March 24, 1979 appellant, appellant's girlfriend, C.J. Guy and Jeff Morris drove to Alverson's apartment in Gardendale. James Carl Johnson, a friend of the deceased, opened the door and saw appellant, Guy and Morris "standing one right next to the other, side by side." (R.p. 32) Johnson saw appellant with a shotgun "pointed in towards the door at me and Mr. Alverson." (R.p. 34) Appellant had "his left hand up under the breach, up under the barrel, and had his other hand back by the trigger." (R.p. 33) Johnson testified that he and Alverson were unarmed and that neither of the three visitors nor the deceased said anything. Johnson said he "sorta sidesteped (sic) and said hey, you've got to be kidding. . . . Right after I said that he just pulled the trigger." (R.p. 33, 34) An autopsy revealed that Alverson's death resulted from shock and hemorrhage due to a shotgun wound to the chest.
Guy and his girlfriend, Anna Humphries, had been at Alverson's apartment earlier, *Page 206 
on the afternoon of March 23, and an argument had ensued between Guy and Alverson. Johnson stated that "they were fixing to fight," but that Guy had left after he (Johnson) told him it would be "the best thing for him to do." (R.p. 24)
According to appellant's confession, Guy was incensed after his first visit to Alverson's apartment and had said "I've got to straighten this out tonight." (R.p. 87) Appellant stated that Guy went to his house and got a shotgun and a motorcycle chain. Appellant, appellant's girlfriend, Guy and Morris then "proceeded" to Alverson's apartment and, upon arriving, appellant got the shotgun out of the trunk and "was just walking up there because I didn't know nothing about these people. . . . [Guy] said they were pretty vicious." (R.p. 88, 90) Appellant contended he "was trying to wave him (deceased) back with the shotgun. Lord knows how the gun went off . . . because I, to my knowledge, did not have my hand on the trigger." (R.p. 88)
Appellant and his companions left the scene because they "didn't know what to do;" but, within four minutes of the police arrival at 12:23 a.m., appellant returned to the scene and made spontaneous exclamations to the officers that "he was the guy that had shot him", that "it had been an accident." (R.p. 88, 132) Appellant's girlfriend made similar statements.
 I.
Based on the foregoing facts, the jury verdict of first degree manslaughter is well supported. Wiggins v. State,354 So.2d 340 (Ala.Cr.App. 1978); Eddy v. State, 352 So.2d 1161
(Ala.Cr.App. 1977); Ala. Code § 13-1-90 (1975).
 II.
The trial court committed no error in admitting State's exhibits 1, 2 and 3, which were photographs made of the deceased at the scene. As a general rule, photographs are admissible in evidence if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge.Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973); Thigpenv. State, 50 Ala. App. 176, 277 So.2d 922 (1973). Photographs may be admitted if they tend to shed light on, strengthen, or to illustrate other testimony in the case. Chunn v. State,339 So.2d 1100 (Ala.Cr.App. 1976). The fact that a photograph is gruesome is no reason for excluding it, if relevant, even if the photograph may tend to inflame the jury. Richards v. State,337 So.2d 171 (Ala.Cr.App.), cert. denied, 337 So.2d 173 (Ala. 1976). And the fact that photographic evidence is merely cumulative of detailed oral testimony does not affect its admissibility. Farris v. State, 57 Ala. App. 390, 328 So.2d 640
(1976). The admission of cumulative evidence, even upon an undisputed fact, is not prejudicial error. Robinson v. State,342 So.2d 1331 (Ala.Cr.App. 1977).
For the same reasons, a photograph of the motorcycle chain found outside Alverson's apartment and the chain itself were properly admitted. Any fact which has a causal connection or a logical relation to another fact, so as to make the other fact either more or less probable, is competent or relevant. Stokesv. State, 373 So.2d 1211 (Ala.Cr.App.), cert. denied,373 So.2d 1218 (Ala. 1979). Appellant's confession contained evidence that a motorcycle chain, along with the shotgun and a "stick," was carried to the deceased's apartment. The admission of evidence which is merely cumulative of an admitted fact is, at most, error without injury to the accused. Senn v. State,35 Ala. App. 62, 43 So.2d 540 (1949).
 III.
During the cross-examination of State witness James Carl Johnson the trial court sustained an objection by the State to the following question:
 "Q During the whole time that you lived there were you at any time you were there not under the influence of either alcohol or marijuana?" (R.p. 45) *Page 207 
The trial court also sustained an objection by the State to the defense introducing evidence that the deceased had a tattoo of a marijuana leaf with the words "Canabis Sativa" on his right arm.
Clearly, the trial court acted within its discretion in disallowing this evidence. Neither an answer to the question propounded to Johnson, nor evidence that the deceased had a tattoo on his right arm would have had any bearing on the case. Johnson had already testified to drinking two or three beers and smoking two marijuana cigarettes during the day prior to the deceased's death. Defense counsel was permitted to cross-examine Johnson at length concerning his consumption of alcohol and marijuana on the date in question. As to the "identifying" (R.p. 74) tattoo on the deceased's right arm, the deceased, in preceding evidence, had been identified repeatedly as the victim of the crime. To have admitted evidence that he had a tattoo could have in no wise enlightened the jury as to any material aspect in the case. The attempted proffer by appellant in both instances would only have served to confuse the issues. The trial court's exclusion of this evidence was, therefore, proper.
It is the court's duty to confine the evidence to the points in issue in order that the attention of the jury may not be distracted, or that their minds may not be withdrawn from the main issue and directed to matters which are foreign or of questionable or doubtful relevancy. Gulley v. State,342 So.2d 1362, 1365 (Ala.Cr.App. 1977).
 IV.
Dr. Ronald L. Rivers testified that he observed "a blood stained white short-sleeved crew neck T-shirt with a defect in the top front . . . consistent with a shotgun wound to the chest in that same area" during the course of the deceased's autopsy. (R.p. 67) Deputy Coroner C.C. Robey assisted Dr. Rivers in performing the autopsy. (R.p. 71) Lawden Yates, a Firearm and Tool Mark Examiner with the Department of Forensic Sciences, testified that in connection with his participation in the case he received a T-shirt "from Mr. C.C. Robey of the Jefferson County Coroner's Office." (R.p. 119) He also received the shotgun used in the killing from Officer Wallace Campbell of the Gardendale Police Department. Mr. Yates was duly qualified as an expert witness with regard to determining "relative distances from the muzzle to the impact point of a shotgun blast." (R.p. 119) Based upon his experience and training, and upon examination of the shotgun and the T-shirt, Mr. Yates testified, over objection, that, in his opinion, the distance between the muzzle of the shotgun and the impact point of the T-shirt was two to ten feet.
We find no error in the reception of this evidence. If a State witness is shown to be an expert in the use of firearms, it is permissible to allow him to express an opinion as to the distance between the deceased and the barrel of gun held by the defendant at the time the fatal shot was fired. Straughn v.State, 270 Ala. 229, 121 So.2d 883 (1960). In any event, the reception of this evidence could not have harmed appellant. Dr. Rivers had previously testified that the fatal shot was not a contact wound, and eyewitness Johnson had testified that appellant was approximately five feet from the doorway at the time the shot was fired. Mr. Yates' opinion was in all respects consistent with their testimony. Furthermore, appellant freely admitted that he shot the deceased. ARAP, Rule 45.
 V.
During closing argument by defense counsel the following exchange occurred:
 "MR. CLARK (Defense counsel): I submit to you that no one is sorrier that that occurred than Wayne Hurst.
 MR. MAHON (Deputy District Attorney): I object. I object to that. It's illegal evidence and I ask the jury not to consider that.
 THE COURT: The jury is not to consider that. Go ahead." (R.p. 139)
Appellant contends that the trial court's ruling may have left the jury with the *Page 208 
impression that he was not sorry and that his acts were intentional rather than accidental. There is no merit to this argument.
In a criminal prosecution the trial judge has broad discretion in controlling closing argument. Elston v. State,56 Ala. App. 299, 321 So.2d 264 (1975); Smith v. City ofBirmingham, 36 Ala. App. 72, 52 So.2d 394 (1951). Each case must be determined on its own peculiar facts, leaving much discretion to the trial judge, who as a rule, can best determine when discussion by counsel is legitimate and when it degenerates into abuse. Garrett v. State, 268 Ala. 299,105 So.2d 541 (1958). After considering all the facts and circumstances of the instant case we cannot say, as a matter of law, that the trial court abused its discretion in so limiting appellant's closing argument.
 VI.
We have carefully reviewed the trial court's oral charge and supplemental instructions to the jury, and find that the court's use of the word "accidentally" in defining second degree manslaughter was correct. Fulghum v. State, 291 Ala. 71,277 So.2d 886 (1973).
 VII.
The trial court refused appellant's requested charge number 10 which reads as follows (R. 189):
 "The Court instructs the jury that a person charged with a felony should not be convicted, unless the evidence excludes to a moral certainty every reasonable hypothesis but that of his guilt; no matter how strong the circumstances are they do not come up to the full measure of proof which the law requires if they can be reasonably reconciled with the theory that the Defendant is innocent. Therefore, the Court further instructs the jury that if after considering the evidence in this case unless you are convinced beyond a reasonable doubt that the evidence excludes to a moral certainty every reasonable hypothesis but that of the guilt of Wayne Cameron Hurst then you should return a verdict of not guilty."
The majority of the State's case was derived from direct evidence. Since very little of the State's case was derived from circumstantial evidence the refusal of this charge was harmless. Harris v. State, 46 Ala. App. 497, 243 So.2d 770
(1970); Johnson v. State, 42 Ala. App. 511, 169 So.2d 773
(1964).
We have examined each issue raised by appellant. In addition, we have searched the entire record for errors prejudicial to appellant's substantial rights and have found none. The Circuit Court's judgment of conviction is, therefore, due to be affirmed.
AFFIRMED.
All the Judges concur.