The Jefferson County Grand Jury, in its October, 1982 session, indicted appellant, *Page 183 
Julia Ann Mitchell, for the murder of Clarence Quarels. On February 1, 1983, she was found guilty as charged, and on February 11, 1983, she was sentenced to twenty years in the state penitentiary.
At trial, in preliminary testimony, David Hubbard stated that he had known Clarence Quarels for twenty years, that they worked together, had lived together for a year and that they were good friends. He testified that he had known Ms. Mitchell all of his life, that she and Quarels were going together, and that she stayed overnight at Quarels' house about three nights a week. He characterized their relationship as that of boyfriend and girlfriend.
Hubbard next recounted events which concluded in the death of Quarels on July 17, 1982. He testified that at 4:30 a.m., on the morning in question, he was awakened by Ms. Mitchell and Mr. Quarels arguing in the street. She was hollering and Quarels tried to get her to come inside. When she refused to come in, he locked the front screen door and went back into the kitchen. Hubbard, who remained in the front room, saw Ms. Mitchell cut the screen, let herself in and go into the bedroom. Later, while Hubbard and Quarels were talking in the front room, she rushed out of the bedroom and said, "I'm going to kill you," and began hitting Quarels in the chest with a knife. Hubbard grabbed her, seizing the weapon, and Quarels collapsed on the floor. Ms. Mitchell stood over him and said, "Oh, I done killed Mr. Clarence," upon which she ran out of the house. In answer to Hubbard's call, both the paramedics and the Birmingham Police Department sent personnel to the scene, where they found Quarels' body.
Mr. Quarels and Ms. Mitchell had been drinking and Hubbard had seen them together the previous night at a party. He testified that they argued often, and that it was his opinion that they were both drunk when they came in that morning.
Detective Ann Ballard, of the Birmingham Police Department, testified that on July 17, at about 8:10 or 8:15 a.m., after advising Ms. Mitchell of her rights, she took a tape recorded statement from her.
In her statement, Ms. Mitchell said that she and Mr. Quarels always argued and that on the morning in question she and Quarels had been drinking and arguing. She got a sharp knife from the kitchen, and, planning to cut him on the arm to "shut him up for a while," she hit him with a knife. She stated that she had not realized she cut him till after Hubbard stopped her and took the knife away. When she realized that Mr. Quarels was injured she ran to a neighbor's house where she remained until the police came for her.
Testimony revealed that Ms. Mitchell had been without sleep for some twenty-three or twenty-four hours and that she had been drinking the night before and that she was upset at the time of making the statement. It was also shown that she was properly advised of her rights, and there was no evidence indicating that she was mistreated in any way, or that any promise of any kind was made to her to induce her to make a statement.
Appellant raises six issues for consideration on appeal. The first issue raised is whether it was error for the court to permit the State to use its peremptory challenges to exclude all black females from the jury. (Apparently, there was a black male on the jury.) At the hearing on appellant's motion for new trial, appellant's counsel asserted that the district attorney in the case had, in violation of appellant's constitutional rights, systematically excluded Black females from the jury.
This issue has been addressed many times and it is clear that it is not error for a prosecuting attorney to strike a jury on the basis of race. Swain v. Alabama, 380 U.S. 202,85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Robinson v. State, 428 So.2d 167
(Ala.Cr.App. 1982); Carpenter v. State, 404 So.2d 89
(Ala.Cr.App. 1980), cert. denied, 404 So.2d 100 (Ala. 1981); and cases cited therein.
In an extensive discussion of the history and purposes of the peremptory challenge *Page 184 
in jury selection, this court, in Allen v. State,414 So.2d 163, 168 (Ala.Cr.App. 1982), held that "[n]o appellate court should attempt to second guess the prosecution's use of its peremptory challenges."
In Swain v. Alabama, supra, the Supreme Court recognized the possibility that constitutional rights may be violated by a State's deliberate and continued exclusion of Blacks from juries through the use of peremptory challenges. The court added, however, that a defendant bears a heavy burden when he seeks to show systematic discrimination of constitutionally significant magnitude. There is, in fact, a presumption in any particular case that the district attorney used the State's peremptory challenges to obtain a fair and impartial jury.Swain v. Alabama, supra; Thigpen v. State, 49 Ala. App. 233,270 So.2d 666 (1972).
Appellant cites State v. Brown, 371 So.2d 751 (La. 1979), where the court found that the defense made out a prima facie case, unrebutted by the State, that there had been systematic exclusion of blacks from the particular petit jury and from prior petit juries. The defense in Brown, supra, presented several witnesses who testified to a systematic and continuing practice of such exclusion of Blacks; hence, the case was reversed and remanded for a new trial.
In this case, appellant offered no proof by way of statistics, facts or testimony from any witness that there existed any continued and systematic exclusion of Blacks from petit juries. Inasmuch as appellant proffered mere unsubstantiated allegations, her argument that the State's peremptory challenges were unconstitutional is untenable.
The second issue raised by appellant is whether the trial court erred in denying appellant's motion to suppress her inculpatory statement.
It is a well settled rule of law in Alabama that a statement made subsequent to arrest is prima facie involuntary and inadmissible at trial, and that the State must demonstrate voluntariness and a Miranda predicate in order to get admission of the statement. Thomas v. State, 373 So.2d 1167 (Ala. 1979);Eakes v. State, 387 So.2d 855 (Ala.Cr.App. 1978); Lewis v.State, 295 Ala. 350, 329 So.2d 599 (1976). The voluntariness of a statement is, however, a question of law to be determined by the trial court upon preliminary proof and that court's decision will not be disturbed on appeal unless it appears contrary to the great weight of evidence, or is manifestly wrong. Balentine v. State, 339 So.2d 1063 (Ala.Cr.App. 1976), cert. denied, 339 So.2d 1070 (Ala. 1976); Daniels v. State,53 Ala. App. 666, 303 So.2d 166 (Ala.Cr.App. 1974); Stewart v.State, 49 Ala. App. 681, 275 So.2d 360 (1973).
There is ample evidence whereby the court could have determined that appellant's statement was voluntarily given. Thus, the trial court's decision on the issue must be upheld.
The third issue raised is whether the trial court committed error in admission of State's exhibits six and seven, which were photographs of the knife which killed the victim, and of the deceased.
The test for determining admissibility of a photograph is whether it is a true and accurate representation of the subject which it purports to represent, as it existed at the time pertinent to inquiry. Elmore v. State, 414 So.2d 175
(Ala.Cr.App. 1982); Osborn v. Brown, 361 So.2d 82 (Ala. 1978).
The court in Osborn, supra, held that ". . . the determination as to the sufficiency of the preliminary proofs offered to identify the photograph or show that it is an accurate representation of the objects which it purports to portray is a matter within the sound discretion of the trial court and will not be reviewable except for gross abuse," at 86. Hurst v. State, 397 So.2d 203 (Ala.Cr.App.) cert. denied,397 So.2d 208 (Ala. 1981); Carpenter v. State, 400 So.2d 427
(Ala. 1981); Moon v. Nolen, 294 Ala. 454, 318 So.2d 690 (1975). *Page 185 
Generally, photographs are admissible if they are verified by a person familiar with the subject matter of the photograph and if they are relevant to some disputed or material issue, illustrate or elucidate some other relevant fact or evidence, or corroborate or contradict some other evidence offered. Photographs may also be admitted if they have some tendency to shed light on, strengthen, or illustrate other testimony in the case. Donner v. State, 409 So.2d 461 (Ala.Cr.App. 1981).
Testimony of the State's witness established that the photographs correctly depicted the scene at the time they were taken. Both the murder weapon and the victim's body were certainly relevant in this trial. We find no abuse of discretion.
The fourth issue raised by appellant is whether the trial court erred in sentencing her to twenty years in the penitentiary under § 13A-5-6 (a)(4) Code of Alabama 1975.
Appellant was convicted of murder, which is a class A felony under § 13A-6-2 (c), Code of Alabama 1975. In regard to sentencing in Class A felony convictions, § 13A-5-6 reads in pertinent part:
 "(4) For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 20 years."
Appellant argues that this section is not mandatory and should not be applied in her case since there were mitigating factors involved. The factors she specifies as mitigating were: the fact that the incident occurred at four or five o'clock in the morning, the drinking bout which preceded the murder, the fact that there was a "domestic" quarrel, and that the murder weapon was a knife kept in the kitchen, as opposed to being a pistol, firearm or other deadly weapon.
We find the language of the applicable statute clear and its meaning plain. The jury in this case, with all mitigating factors before them, found Ms. Mitchell guilty of murder. The knife used by Ms. Mitchell certainly qualified as a deadly weapon. Thus, sentencing under § 13A-5-6 (a)(4) was proper.
The fifth issue appellant raised is whether use of a chart by the trial court in its oral charge to the jury constituted reversible error. There was no objection made at trial to the use of the chart, and hence, no adverse ruling to be reviewed. The correctness of the trial court's oral charge cannot be challenged for the first time on appeal. Jackson v. State,375 So.2d 558 (Ala.Cr.App. 1979); Hafley v. State, 342 So.2d 408
(Ala.Cr.App.), cert. denied, 342 So.2d 412 (Ala. 1977); Cox v.State, 280 Ala. 318, 193 So.2d 759 (1967).
Lastly, appellant contends that the prosecutor's closing arguments were prejudicial and thereby denied appellant due process.
The parts of the prosecutor's closing argument which appellant objects to were as follows:
 "(1) MR. BOUDREAUX: So, what's the defense in this case? Well, it's what I call a multiple choice defense. Mr. Johnson, he figures well, it can't be alibi because she was caught there at the scene and confessed to it. So, what have we got left? We have got self-defense or insanity.
 "MR. JOHNSON: Now, Judge, I'm going to object to this. There is no insanity in this case. And I think this is highly improper.
 "THE COURT: He's talking about what lawyers do, I guess, sometimes, in these cases. I might urge you to perhaps get away from this area. But I'm not going to sustain your objection at this time, Pete.
"MR. JOHNSON: We respectfully except.
 "MR. BOUDREAUX: When we get all of these defenses that you can elect from, the defense attorney has got to pick one that he thinks the jury will buy.
 "MR. JOHNSON: Now, Judge, I object to this. I think this is improper argument.
 "THE COURT: Scott, I don't think that you can impute to Mr. Johnson any type *Page 186 
of suggestion that he might do something inappropriate or improper to manufacture evidence or fictionalize the defense. So, I will sustain.
 "MR. BOUDREAUX: I wasn't trying to imply that, Your Honor. I'm just trying to discuss with the jury the options open in this case —
"THE COURT: All right.
"MR. BOUDREAUX: She's a murderer.
 "MR. JOHNSON: Judge, I object to that improper argument.
 "THE COURT: What crime was committed, if any, ladies and gentlemen, is exclusively your province to determine.
 "MR. BOUDREAUX: But when you go home and talk to your friends and neighbors you can tell them that you done your good deed and you cut another one loose.
 "MR. JOHNSON: Judge, I object to this improper argument.
"THE COURT: All right. Let's move on."
This court held in Sprinkle v. State, 368 So.2d 554, 561
(Ala.Cr.App. 1978), cert. denied, 368 So.2d 565 (Ala. 1979): "Trials are adversary in nature and a vigorous prosecution and defense is to be expected. Neither side should be hampered too closely in making its particular presentation." (citations omitted)
In addition, the trial judge in a criminal prosecution has broad discretion in controlling closing arguments. Hurst v.State, 397 So.2d 203 (Ala.Cr.App.), cert. denied, 397 So.2d 208
(Ala. 1981); Elston v. State, 56 Ala. App. 299, 321 So.2d 264
(1975); Smith v. City of Birmingham, 36 Ala. App. 72,52 So.2d 394 (1951). Each case must necessarily be determined on its own peculiar facts, and the trial judge, who is in the best position to determine when closing arguments are prejudicial and what curative measures are called for, is given wide discretion. Hurst, supra; Garrett v. State, 268 Ala. 299,105 So.2d 541 (1958).
After careful consideration of the record before us, we cannot hold that, as a matter of law, the trial court abused its discretion during the prosecutor's closing arguments.
We have examined each issue raised by appellant, and we have searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction and sentencing is affirmed.
AFFIRMED.
All the Judges concur.