MONROE, Judge.
The plaintiff, Michael Harpér, appeals from a summary judgment entered for the defendant in a personal injury lawsuit.
Initially, we note that in order to enter a summary judgment, the trial court must determine that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Silk v. Merrill Lynch, Pierce, Fenner & Smith, 437 So.2d 112 (Ala.1983). For cases filed after June 11, 1987, Rule 56 is read in conjunction with the “substantial evidence rule,” § 12-21-12, Ala.Code 1975. See Bass v. South-Trust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). To defeat a properly supported motion for a summary judgment, the plaintiff must present substantial evidence, i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, we will view the evidence in a light most favorable to the nonmovant.
The record reveals the following facts. Michael Harper and his wife and four children rented a home from the defendant, Osmund Coleman, in June 1994. On July 14, 1994, upon returning from work, Harper went into the backyard to retrieve some tools from a shed, intending to use them to repair a sink. As he walked from the shed báck to the house, he noticed that the window air conditioning unit outside his daughter’s bedroom had slipped from one of its securing brackets.' Harper feared that the unit might fall, so he decided to place it back on the bracket. When he touched the bracket, he immediately suffered an electrical shock so severe that it knocked him onto the ground and tore two fingers off his right hand. Harper alleges that the flow of electricity through his body also caused injury to his shoulder and caused brain damage and vision loss. Harper alleges that he has incurred medical expenses in excess of $100,000 for treatment of these injuries.
*390 Harper sued Coleman, alleging that Coleman negligently or wantonly installed the air conditioner unit or that Coleman negligently or wantonly caused it to be improperly installed. The trial court entered a summary judgment for Coleman, holding that, as a lessor, Coleman was not liable for injuries caused by latent defects that were not known to him at the time he leased the home to Harper. Harper appealed to the Alabama Supreme Court, which deflected this ease to this court pursuant to § 12-2-7(6), AJa.Code 1975.
In response to Coleman’s motion for a summary judgment, Harper submitted the affidavits of three experts. All three experts opined that the air conditioner had been improperly installed. Specifically, they noted that the air conditioning unit rated 10.3 amps at load, and that it was connected to a 50-amp circuit breaker. According to the National Electric Code, under no circumstances should the unit have been connected to a breaker rated higher than 25 amps. Each of Harper’s experts believed that this improper connection caused the unit’s wiring to malfunction, and that the malfunctioning ultimately resulted in the electrical current’s flowing from the unit into Harper’s body. Harper’s experts also said there were other problems with the unit, for example, that it was installed outdoors without being weatherproof, that the wire running from the plug to the breaker had been spliced three times, and that the unit shared a circuit breaker with the electric range, (they said this last condition is also a violation of the National Electric Code). One expert stated that the hazardous conditions amounted to a “deathtrap” for young children. Harper’s experts also stated that the defects in the air conditioner would not have been visible to someone viewing the unit from the outside, but that the defects would have been known by the installer, who purposefully made the faulty connections.
In support of his motion for summary judgment, Coleman submitted the affidavit of . one expert, who opined that the air conditioning unit had two latent defects. First, he said that there was not an electrical connection between the ground blade of the male plug to the case of the air conditioner. He also said that there was an electrical short in the power supply extending from the compressor to the case, which he stated, “could have been from natural deterioration of the insulation on the electrical wires that could occur over time.” Harper’s experts contend that this short was not caused by natural deterioration but by the improper circuit breaker connection described above. Coleman’s expert further explained that if the ground wire had been properly connected, then the house circuit breaker would have tripped and prevented the hazardous condition. His expert added that the wiring of the house failed to meet the standards of the National Electric Code in several areas, and he suggested that these deficiencies would have prevented the circuit breaker from tripping anyway.
The general rule is that, absent a covenant to repair, a lessor is liable only for injuries caused by latent defects known to the lessor at the time of the leasing and which the lessor concealed from the tenant. Casey v. Estes, 657 So.2d 845 (Ala.1995). This rule has been more specifically described in § 358, Restatement (Second) of Torts (1965), which has been adopted by the Alabama Supreme Court. Avon-Avalon, Inc. v. Collins, 643 So.2d 570, 574 (Ala.1994); Dunson v. Friedlander Realty, 369 So.2d 792 (Ala.1979). Section 358 states:
“(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sub-lessee for physical harm caused by the condition after the lessee has taken possession, if
“(a) the lessee does not know or have reason to know of the condition or the risk involved, and
“(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.”
*391 Coleman testified in his deposition that he was not sure who had installed the air conditioning unit, but that he believed that he had allowed a tenant to install it in exchange for a rental payment. There is no evidence in the record indicating that this tenant was a licensed electrician or that this tenant had any electrical training. There is also no evidence showing that Coleman ever inspected the unit himself or had anyone else inspect it. Although a lessor has no duty to inspect for latent defects, as a general rule one who assumes a duty requiring skill must perform it with reasonable care. Osborn v. Brown, 361 So.2d 82 (Ala.1978). In addition, a tenant has a right to rely on a belief that he or she has reasonably safe appliances. Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 14 So.2d 527 (1943).
If the tenant who installed the unit was not an electrician or was not otherwise qualified to install an electrical appliance, then Coleman knew or had reason to know that the unit had likely been improperly installed and that, as a result, there was a risk that the unit might cause injury to future tenants. In moving for a summary judgment, Coleman faced the initial burden of making a prima facie showing that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law. Pittman v. Mast Adv. Publishing, Inc., 619 So.2d 1377 (Ala.1993). Coleman failed to make a prima facie showing that he did not have reason to know of the defects. Thus, whether Coleman had reason to know of the defects is a disputed issue of material fact, and the summary judgment was inappropriate. See, e.g., Bradford v. Universal Constr. Co., 644 So.2d 864, 866 (Ala.1994) (holding that summary judgment was inappropriate where defendants failed to make a prima facie showing that accident was not foreseeable, despite defendants affidavits stating that it was not foreseeable).
In holding that Coleman could be liable for Harper’s injuries, we are not deviating from those cases holding that lessors are not liable for latent defects that are unknown to them at the time of the leasing. However, this case is distinguishable. For instance, in this case there is no evidence that the air conditioner was installed by a person qualified to install electrical appliances. See Osborn, supra (holding that the lessor was not liable; however, there was no allegation that electrical contractors, who installed the wiring in the apartment building, were unqualified, even though there was a staple through one wire); Bevis v. L & L Services, 360 So.2d 296 (Ala.1978) (holding that the lessor was not liable, but the tenant did not allege that the person who constructed the allegedly defective steps, and who owned a contracting business that performed a wide range of construction, was not qualified). In addition, this case is distinguishable from those holding the lessor not liable where the defects were not latent, because Coleman’s own expert admits that the defects in the unit are latent. See Casey, supra (holding the lessor not liable where open gas line was highly visible and was therefore not a latent defect). Furthermore, this case is distinguishable from those holding the lessor not liable based on a lack of foreseeability, because it was foreseeable that a future tenant would touch the air conditioning unit. See, e.g., Dunson v. Friedlander Realty, 369 So.2d 792 (Ala.1979) (holding it not foreseeable that the plaintiffs children would eat lead paint chips).
In reaching our decision, we are mindful that if we , held, otherwise we would be sending lessors a message that is undesirable as a matter of public policy. We cannot allow lessors to permit untrained persons to install potentially dangerous electrical appliances and then to insulate these lessors from liability under the guise that they did not know of any specific defect. Let it be clear, however, that, in keeping with established law, our holding does not expand the liability of lessors to include liability for defects caused by trained electricians, unless the lessor’s liability is otherwise proven under agency or re-spondeat superior theories. See Osborn, supra.
Harper also argues that we should adopt the equivalent of an implied warranty of habitability in the landlord-tenant context; this we decline to do. This doctrine has been rejected by the Alabama Supreme Court on more than one occasion, see Osborn, supra; *392 Murphy v. Hendrix, 500 So.2d 8 (Ala.1986). We agree with the Supreme Court that adoption of new laws is a function intended for the legislature. Murphy, supra.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, J., concur.
CRAWLEY, J., dissents.
THIGPEN, J., recuses.