On July 28, 2000, I concurred in the opinion reversing the judgment of the Court of Criminal Appeals. After reviewing the State's application for rehearing, I have changed my mind. I respectfully disagree with this Court's interpretation of the facts, its application of the law, and its judgment of reversal.
The State presented direct evidence concerning the condition of the child injured in this case. The relevant facts of the case at bar are: the child had been physically abused;[1] the child had sustained an abdominal injury 24 to 48 hours before the hospital examination; the child had died one and one-half to two hours before the hospital examination of the child's body; the child had not eaten anything before the hospital examination;[2] there were blood and bile stains on the child's bed and a puddle of blood under the bed; and the child had not been able to walk, or had walked with a limp, the day before the hospital examination.[3]
It is true that there was no testimony from a doctor stating: "This child would have lived if he had been seen by a doctor." However, a doctor did say that the *Page 1174 
proper course of treatment for an injury of the magnitude that this child suffered would have been surgery. The statute relevant to this case reads:
 "A person is criminally liable if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was sufficient to produce the result and the conduct of the actor clearly insufficient."
§ 13A-2-5(a), Ala. Code 1975. The record shows that this child needed surgery but was never taken to a doctor; the mother passed up the opportunity to correct his problem. Therefore, the mother's conduct in failing to seek medical help for her child, who was near death, resulted in his not receiving the medical attention he needed to avoid death.
The jury assessed the evidence, both direct evidence and circumstantial evidence, and decided that the mother had not beaten the child to death (Count I). Instead, the jury determined that her son died because she failed to seek medical attention (Count II).
"`In determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution. McMillian v. State, 594 So.2d 1253
(Ala.Crim.App. 1991); Faircloth v. State, 471 So.2d 485 (Ala.Crim.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985); Cumbo v. State, 368 So.2d 871
(Ala.Crim.App.), cert. denied, 368 So.2d 877 (Ala. 1979). Here, there was sufficient evidence introduced to present the case to the jury. "Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case."McMillian, 594 So.2d at 1263.'" Bone v. State, 706 So.2d 1291, 1300
(Ala.Crim.App. 1997) (quoting Underwood v. State, 646 So.2d 692, 695
(Ala.Crim.App. 1993)).
 "`"The weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury. . . . A defendant's guilt may be established by circumstantial evidence as well as by direct evidence."' Mitchell v. State, 450 So.2d 181 (Ala.Crim.App. 1997) (quoting Smith v. State, 698 So.2d 189, 214 (Ala.Crim.App. 1996), aff'd, 698 So.2d 219 (1997))."
Mack v. State, 736 So.2d 664, 675 (Ala.Crim.App. 1998). After the jury had reviewed all direct evidence and circumstantial evidence, it found that Lucas had caused the death of her son by neglecting to seek medical attention.
The majority states in its opinion:
 "The State argues that, if the direct evidence does not prove causation, nonetheless the circumstantial evidence proves causation. However,
 "`"[a] finding of guilt from circumstantial evidence is based on the `inference of a fact in issue which follows as a natural consequence according to reason and common experience from known collateral facts.' This is to be distinguished from a supposition, which is `a conjecture based on the possibility or probability that a thing could have or may have occurred without proof that it did occur.' `Mere possibility, suspicion, or guesswork, no matter how strong, will not overturn the presumption of innocence.'"'" *Page 1175 
(Emphasis added in the majority opinion.) (Citations omitted.) The majority suggests, by quoting this language, that the evidence in this case presented "[m]ere possibility, suspicion or guesswork." However, this language more accurately supports the conclusion that the jury considered circumstantial evidence and properly determined that Lucas was guilty — thus, it supports the judgment of the trial court and the judgment of the Court of Criminal Appeals.
A criminal proceeding differs from a civil proceeding. The majority has compared this case to a civil medical-malpractice case in which a party seeking to impose liability on a physician must present as a witness another doctor to testify that the defendant physician did not meet the standard of care. Therefore, in a criminal case involving a layman parent as the defendant, does the State, seeking to impose liability, need only to present another parent as a witness to testify as to what he or she would have done in a similar situation? We do not have the layperson testify as to the duty of care in a medical-malpractice proceeding; accordingly, we should not require that a doctor testify as to the duty of a parent in a criminal proceeding involving the question when medical help should be sought. A jury can, and a jury did in this case, make such a determination. In other words, the doctor's testimony in this case was not essential to a finding by the jury that the mother's delay in seeking medical treatment caused her child's death.
The evidence was sufficient to support the jury verdict finding Lucas guilty of the charge stated in Count II of her indictment. Therefore, I would affirm the judgment of the Court of Criminal Appeals.
[1] The child had bruises and abrasions on his body, including his stomach, leg, neck, chest, buttocks, and head (R. 915, 1016-18, 1022, 1248-52); his ribs were protruding through his chest and the area around his ribs was bruised (R. 1251, 1264-65); his left arm was broken (R. 1259-60, 1290); and he had "red dots" around one of his eyes (R. 915).
[2] The mother testified that the child was fed doughnuts, Gatorade, etc., just before his death. Dr. Marsha Raulerson, an emergency room pediatrician, attempted to empty the child's stomach, but she found only air — no doughnuts or other food. (R. 1022-23)
[3] There was conflicting testimony concerning the child's ability to walk. However, an appellate court must view the evidence in a light most favorable to the State when it is reviewing a judgment based on a jury verdict of guilty. The mother should have known that there was an obvious problem with her son's ability to walk.