This is an appeal by the defendant, Julia King, from an adverse judgment rendered against her in an unlawful detainer action. We reverse and remand.
Mrs. Julia King, age 77, is the second wife and widow of Forest A. King who died testate on June 21, 1978. Forest King's first wife died after their marriage of some 47 years, leaving two daughters, Katherine (now Kathi Reid) and Edith (now Edith Brown). Subsequently Forest King married the defendant and they lived together for about eight years at his residence located at 3001 East Riverside Drive in Mobile.
On July 5, 1972, when Mrs. Julia King was approximately 67 years of age, Mr. King executed a last will and testament containing six articles. Article Two devised to Julia King "all clothing, jewelry, household goods, personal effects, automobiles and all other tangible property owned by me at the time of my death." Article Three left to Julia King "all cash on hand or on deposit and all securities, choses in action or other intangibles." Article Five devised the residue to Mrs. King. Article Four devised "to my daughters, Katherine K. Reid
and Edith K. Brown, equally, my real property and improvements thereon located in Mobile, Alabama, used by me as my residence, located at 3001 East Riverside Drive, Mobile, Alabama." Article Six appointed Katherine K. Reid as executrix.
On that same day and following the execution of this will Julia King executed the following document:
 "I, Julia Ann King, the wife of Forest A. King, the Testator, have read the contents of the foregoing Last Will and Testament executed by him this day. With full knowledge of the contents of the foregoing Last Will and Testament, I do hereby consent to the provisions contained therein and waive my rights as a widow vested in me under the laws of intestate succession and dower and homestead in the State of Alabama. I consent *Page 613 
to the provisions of my husband's will, even though the same may result in less benefits to me than would be provided in the case of my husband's intestacy." (Emphasis added.)
Shortly after Forest King's death this will was admitted to probate and Kathi Reid was appointed executrix. Mrs. King continued to live in the house at 3001 East Riverside Drive under circumstances to be discussed. A dispute arose between Kathi Reid and Mrs. King concerning the latter's continuing residence there, ultimately resulting in a wrongful detainer action being brought by Mrs. Reid against Mrs. King in the Mobile County District Court. In that action Mrs. King denied,inter alia, that her residence was as a tenant but claimed a life estate in the property under Code of Ala. 1975, §§ 6-10-60
and -62. The district court awarded the plaintiff Reid a judgment for the premises. Mrs. King appealed from that judgment to the circuit court. On the day appointed for trial in that court, Mrs. King admitted signing the waiver document, alluded to earlier, but asserted by counter affidavit that she "did not read it nor understand its ramifications," that she "was told to sign and . . . did sign;" that she "did not receive any consideration for signing it;" and "was not aware of the value of [her] husband's estate nor what amount [she] was legally entitled to receive."
Following a hearing, the circuit court awarded a judgment for the plaintiff for the property. This appeal ensued.
The defendant has raised three issues which we will considerseriatim:
I. Whether or not plaintiff could properly bring an action of unlawful detainer.
Under this issue the defendant argues that the plaintiff has failed to show either (1) lawful entitlement to the premises, or (2) the existence of a landlord-tenant relationship.
On the first point, the authorities are collected in Murphreev. Griffis, 215 Ala. 98, 109 So. 746 (1926), showing that real property devised passes immediately on the death of the testator to the devisee. Accordingly, title passed to the devisees Reid and Brown.
No issue is made concerning the right of Kathi Reid to bring this action, either as executrix or as a co-owner. The only issue raised in this context is whether a landlord-tenant relationship existed between Reid and Mrs. King. Although it is not absolutely clear from the record, we believe that the facts justify the conclusion that a landlord-tenant relationship was established between Reid and Brown, on one hand, and Mrs. King on the other. We quote from the record:
 "Q. After your father's death, did you and your sister and Mrs. King have some conversations about the property on which she resided at the time?
"A. Yes, we did.
"Q. And what were those conversations?
 "A. Well, the day of the funeral we sat down as a family group and tried to make some decisions about what we would do with the property. It was my father's original intention that either my sister or myself buy each other out and use it as a home residence, or make it accessible to the grandchildren, but we neither — she lived in Iowa. I lived in Baldwin County, and neither one of us at that time knew exactly what we would like to do with the property.
 "Q. Did you make any agreement with Mrs. King so far as her remaining on the property?
 "A. Yes, we asked that she pay the taxes and insurance to make it economically feasible for us to do that.
 "Q. Did you ever at any time say that she could continue — or tell her that she could continue to live there for the rest of her life?
"A. No, I did not.
"Q. And did I, if you know, write her a letter —
"A. Yes, I have a copy of that letter.
"Q. — confirming that agreement?
"[Plaintiff's Counsel]: Your witness.
 "THE COURT: How long was this to go on that she was to stay there and pay the taxes and the mortgage? *Page 614 
 "THE WITNESS: Sir, we never made that decision because I felt at that time that that wasn't a decision that I could make due to her age, and we didn't know what our continuing financial situation would be, and we would have loved to have kept it forever, but we just simply can't afford to.
"[Plaintiff's Counsel]:
"Q. Did she repay the mortgage and taxes —
 "A. She paid the insurance one time prior to the hurricane in 1979, and we've received nothing since that time.
 "Q. And since that time, have you made the taxes and insurance payments? "A. Yes, I've had to.
Because of its relation to the payment of taxes and insurance on the premises by Mrs. King in exchange for her residence on the property, this arrangement at most became a tenancy from year to year, and possibly could have been a tenancy for a term of months. In any case, there was no objection to this evidence for the plaintiff establishing a landlord-tenant relationship nor to the plaintiff's evidence concerning the defendant's default. See generally, East v. Tingley, 254 Ala. 309,48 So.2d 316 (1950). However, the fact that the trial court could have found such a relationship, for the purpose of deciding whether unlawful detainer would lie, does not necessarily control the outcome, as the ensuing discussion will show.
II. Whether or not the widow is entitled to reside on the premises until the devisees clear the property of the homestead rights or until the homestead is sold.
For this proposition the defendant cites us to Code of Ala. 1975, §§ 6-10-60 and -62, and § 6-10-99. The defendant concedes, however, that the homestead here was in fact devised, and hence that §§ 6-10-60 and -62 have no operative effect. Defendant maintains, however, that § 6-10-99 nevertheless requires entitlement in the widow to the homestead until it is either cleared or sold. Section 6-10-99 states:
 "Where a homestead right exists in property devised by will, the person or persons to whom said property is devised may clear the said property of such homestead right by paying to the personal representative, in lieu of such right, the sum of $6,000.00. . . ."
In Dorough v. Johnson, Ala., 373 So.2d 1082 (1979), this Court analyzed the statutes on dower and homestead, especially noting that the widow's right to the homestead exemption was available to her whether she dissented from the will or not, citing Johnson v. Johnson, 252 Ala. 366, 41 So.2d 287 (1949). We also recognized that § 6-10-60, allowing a homestead exceeding $6,000 in value in certain cases, had no operative effect when the homestead had been devised by will. According to Dorough, however, the widow does have the statutory homestead exemption not exceeding $6,000 or its value when the homestead has been devised, but under § 6-10-99 the devisees, plaintiff and her sister here, may clear the property of the widow's homestead rights by paying the personal representative, for the widow's benefit, the sum of $6,000. Brown v. Sieber, Ala.Civ.App., 379 So.2d 620 (1980). Thus it must be seen that Mrs. King did possess a statutory homestead exemption even though that homestead had been devised by her husband. Such a right may be waived or contracted away, cf. Howell v. Ward,230 Ala. 379, 385, 161 So. 487 (1935); Dorsey v. Dorsey, 224 Ala. 496,499, 140 So. 540 (1932); however, the widow may be relieved from such a transaction by a court of equity upon a finding that she entered into it unadvisedly in ignorance of the condition of the estate, and with a person standing in a fiduciary or confidential relation with her, and thus under a duty to protect her. Dorsey v. Dorsey, supra 224 Ala. at 499,140 So. 540.
The evidence clearly established that Mrs. King executed the consent and waiver document. However, there is also evidence that she executed it unadvisedly. A person with only a ninth grade education, Mrs. King established that her husband was the dominant partner in their marriage: "When he asked me to do anything, I went ahead and done it," was the way she described *Page 615 
their relationship, and when he asked her to sign the paper she signed it without reading it, not understanding what she was signing and without any advice concerning it. She testified that she "didn't even get to look at the thing. He just asked me to sign it and I got up and signed it and we got up and left."
Thus, under the evidence an issue was made as to whether or not Mrs. King should be relieved from her waiver under the authorities heretofore cited. It is apparent from the record, however, that the trial court inadvertently misconceived this controlling issue, for the judge, in more than one instance expressed the view that he was trying a will contest and that "what should have been done is there should have been descent [sic] from the will if she was not happy with its terms. . . . There is a will that's been valid and probated which gives this property to the two sisters and there's nothing I can do to change that will," he added. Of course, if the widow were relieved by equity from her waiver, the homestead law would allow her an interest in the property notwithstanding the terms of the will, as we have shown. The inadvertent disregard of this material issue calls for remanding the cause to enable to the trial court to address that issue. Cf. Accardi v.Pennsylvania Railroad Co., 383 U.S. 225, 86 S.Ct. 768,15 L.Ed.2d 717 (1966); Luckenback S.S. Co. v. United States,272 U.S. 533, 47 S.Ct. 186, 71 L.Ed. 394 (1926). See also 5 Am.Jur.2d Appeal and Error § 974 (1962).
III. The final issue before us concerns the plaintiff's contention that Code of 1975, § 6-10-60, et seq., and § 43-5-1, et seq., violate the equal protection clause of the Fourteenth Amendment to the United States Constitution, citing Frontierov. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583
(1973), and Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251,30 L.Ed.2d 225 (1971). We are urged to hold that sex is a suspect classification, and thus when viewed under either a strict scrutiny or a rational basis test that these statutes must be held unconstitutional. Ransom v. Ransom, Ala., 401 So.2d 746
(1981), and a casual reading of the present language of §6-10-60, et seq., dispose of the attack on those statutes. In any case, the record discloses that these issues were not presented to the court below, and thus review of them is foreclosed here. Woodham v. Woodham, Ala., 387 So.2d 150
(1980); Cooper v. Green, Ala., 359 So.2d 377 (1978).
The order of the trial court is, therefore, reversed, and this cause is remanded to that court for further proceedings in accord with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.