**Eric Ashley KITCHENS, a minor, suing By and Through his father and next friend, Darrel KITCHENS, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 83–T–1290–N.**

United States District Court, M.D. Alabama, N.D.

March 6, 1985.

---

J.. Paul Lowery, Montgomery, Ala., for plaintiff.

John C. Bell, U.S. Atty., Kenneth C. Vines, Asst. U.S. Atty., Montgomery, Ala., for defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Eric Ashley Kitchens, a child, has brought this lawsuit against defendant United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671–2680. He claims that the United States is liable for a fall he suffered at a military base in Montgomery, Alabama. Based on the evidence presented at a non-jury trial limited to the issue of liability, the court concludes that the United States is liable for the child's fall.

### I.

Eric, now nearly nine years old, is the son of U.S. Air Force Sergeant Darrell Kitchens and his wife. In April 1981, the Kitchenses lived in noncommissioned officers quarters at Maxwell Air Force Base in Montgomery, Alabama, where Sergeant Kitchens was stationed. The Kitchenses lived in an area of identical buildings each of which has two apartments side-by-side. A notable feature of the buildings is a garage underneath each apartment with a cement ramp leading up through the backyard to the street. Each ramp has a metal railing on either side, consisting of four vertical posts and two horizontal bars attached to the building at one end. Each building shares a backyard with its neighbors on either side. The Kitchenses' apartment shared a yard with that of the family of Sergeant Claude Kennedy.

On April 25, 1981, Eric was playing with one of the Kennedy children and another neighbor's child in the backyard between the Kitchenses' and the Kennedys' apartments when Eric suffered a fall. Standing at the railing of the Kennedys' garage, he grabbed hold of the top horizontal bar at the section nearest the building. The bottom horizontal bar at this section was not in place. Eric fell through the gap in the

railing created by the missing section and landed on the cement pavement below.

The Air Force houses over one thousand families at two bases and one annex in Montgomery, of which Maxwell Air Force Base is the largest. Air Force personnel and their families choose between living on or off the base. If they choose to live off the base, they receive a housing allowance which they forego if they choose to live on the base. Air Force regulations and agreements signed by personnel living on the base establish conditions governing their occupancy. Occupants of base housing agree to give thirty-days notice before leaving; correspondingly, the Air Force agrees not to evict occupants without cause. Housing is allotted according to rank and family size; occupants must notify the Air Force when these factors change or when they are stationed elsewhere so that they can be allotted new housing.

With regard to the maintenance of housing, occupants agree to undertake the duties of homeowners. They are responsible for minor repairs and must maintain their yards in proper condition. The base housing manager regularly inspects the yards and notifies occupants of deficiencies. When in need of assistance with repairs, occupants are to call on the base civil engineer who provides a maintenance service. This service is provided by a staff of military personnel. In addition, in April 1981, the base civil engineer contracted with a private contractor to make certain repairs. Repairs "within the contract" were handled by the contractor, while those "outside the contract" were handled directly by the base civil engineer, that is by military personnel. Both the contractor and base civil engineer operated service desks where residents could report problems. Finally, the Air Force operated a safety office to investigate potentially hazardous conditions on the bases.

A few days before Eric fell, Sergeant Kennedy had seen the bottom horizontal bar detached from his building, though not fallen out completely. He called Air Force personnel at least once to report the problem, but no one came to fix it.

Also, this particular section of the railing had detached in this way many times before, and on two or three prior occasions had fallen out completely, as it had before Eric fell. Neighbors were even aware of the defective railing. Each time the railing became defective, the Kennedys reported the problem to the Air Force and someone tried to fix it. Air Force personnel testified that they considered such missing railings as serious and urgent problems.

## II.

■ According to the Federal Tort Claims Act, the court is to determine liability by applying the appropriate law of the forum state. 28 U.S.C.A. §§ 1346(b), 2674. *See Massey v. United States*, 733 F.2d 760 (11th Cir.1984). Thus, the court must determine whether under Alabama law the United States owed Eric Kitchens a duty of care, the breach of which caused his fall. *See Quillen v. Quillen*, 388 So.2d 985, 988 (Ala.1980).

■ Under Alabama law, "a landowner's duty to one upon his premises depends upon the status of the latter with regard to the land," that is, whether the latter is, for example, a trespasser, a licensee, an invitee, or a tenant. *Frederick v. Reed*, 410 So.2d 95, 97 (Ala.Civ.App.1982). In Alabama, a trespasser is one who enters land without the owner's permission. *Tolbert v. Gulsby*, 333 So.2d 129 (Ala.1976). A licensee is one who enters land with the owner's permission, most typically as a social guest. *Frederick v. Reed*, 410 So.2d 95, 97 (Ala. Civ.App.1982). An invitee, on the other hand, enters with permission but also to bestow some material benefit on the landowner. *Quillen v. Quillen*, 388 So.2d 985, 988 (Ala.1980). A tenant has additional, more substantial connections with the land and the landowner. "An invitee is a visitor, a transient.... A tenant, on the other hand, does not merely visit, but acquires an interest in the property, including the exclusive legal possession of the leased prem-

ises." *Osborn v. Brown*, 361 So.2d 82, 87 (Ala.1978) (citations omitted).

██ Alabama courts have found a variety of factors to establish a landlord-tenant relationship even absent the parties' explicit agreement, as most typically in a lease. Exclusive legal possession, as stated, is such a factor. *See Rehfuss v. McAndrew*, 33 So.2d 16, 18 (Ala.1947). "The payment and receipt of rent has been held to establish the relationship of landlord and tenant." *Osborn v. Brown*, 361 So.2d 82, 87 (Ala.1978); *see also Hackney v. Griffin*, 244 Ala. 360, 13 So.2d 772 (1943). In *King v. Reid*, 428 So.2d 611 (Ala.1983), an agreement simply to pay the taxes and insurance in return for permission to stay in the premises created a landlord-tenant relationship. *Id.* at 614.

██ Weighing these factors in light of the evidence, the court finds that the United States had a landlord-tenant relationship with the occupants of the noncommissioned officers family housing. The evidence was that the occupants forewent a housing allowance in order to live at Maxwell Air Force Base and that the Air Force had the benefit of this allowance. For this, the occupants obtained exclusive legal possession of their apartments. The Air Force agreed not to evict them without reasonable cause. The occupants agreed to maintain the apartments and the yards. That they could leave with thirty-days notice did not mean that they were not tenants. *See Marcrum v. Embry*, 291 Ala. 400, 282 So.2d 49, 52 (1973). Indeed, the Air Force required that the occupants undertake the duties of homeowners.

Accordingly, at the time Eric fell through the partially missing railing, the United States owed the Kennedys and the Kitchenses that duty of care owed tenants. As the child of a tenant and the guest of another tenant, Eric enjoyed the protections of tenants under Alabama law. *Uhlig v. Moore*, 265 Ala. 646, 93 So.2d 490, 492 (1957) (landlord owes a tenant's guest the same duty of care owed the tenant).

### III.

██ Having determined what relationship Eric and the United States had, the court must consider what duties the relationship imposed on the United States. A landlord in Alabama may have various obligations to a tenant; however, most depend on the landlord's explicit agreement or affirmative conduct. Unlike many states, Alabama recognizes no implied warranty of habitability in residential leases. *Martin v. Springdale Stores, Inc.*, 354 So.2d 1144, 1145–46 (Ala.Civ.App.1978). Thus, a landlord is responsible for defects in the premises only in limited circumstances. One is with hidden defects existing before the tenancy of which the landlord has knowledge, *Taylor v. Leedy and Co., Inc.*, 412 So.2d 763 (Ala.1982), and the tenant does not. *Cohran v. Boothby Realty Co.*, 379 So.2d 561 (Ala.1980). Another is where the defect is in an area where the landlord has retained control. *Hancock v. Alabama Home Mortgaging Co.*, 393 So.2d 969, 970 (Ala.1981). In addition, the landlord is responsible if he affirmatively agrees to make repairs. *Martin v. Springdale Stores, Inc.*, 354 So.2d 1144, 1146 (Ala.Civ.App.1978). This may result from a general express warranty or a single instance where the landlord undertakes repairs. Thus, although "a landlord is not an insurer of the safety of the premises," it is well settled that " 'where the lessor, under no duty to repair, voluntarily undertakes so to do, he is liable for injuries proximately caused by negligence in so making repairs....' " *Dunson v. Friedlander Realty*, 369 So.2d 792, 795 (Ala.1979), *quoting Faucett v. Provident Mut. Life Ins. Co. of Philadelphia*, 244 Ala. 308, 13 So.2d 182, 186 (1943).

The defect involved in Eric's fall was the loose bottom horizontal bar in the railing around the Kennedys' garage. This certainly was not a hidden defect, and there is no evidence that it existed when the Kennedys moved in. However, the evidence does reflect that the United States is liable under two other theories.

## A.

First, the United States is liable because the garage where Eric fell was in an area over which the Air Force retained control. Whether a landlord has retained control is a question of fact. *Hancock v. Alabama Home Mortgage Co., Inc.,* 393 So.2d 969, 970–71 (Ala.1981). The evidence was that the railing through which Eric fell was located in the yard between the Kennedys' and Kitchenses' buildings. According to the evidence, those living in the area considered this a community yard. No fences divided it among the apartments. Furthermore, the Air Force itself treated the yard as an area under its continued control. The base housing manager conducted regular inspections to ensure that occupants maintained their yards. Most significantly, the base civil engineer testified that his permission was necessary for occupants to make improvements in the yard, and that occupants could not have erected fences around their garage railings without the permission of his office. He explained that such prior permission served to ensure that any such fences would be uniform throughout the area. Furthermore, the occupants of the housing were to report problems with the railings to the Air Force, rather than make repairs or improvements themselves. In light of these circumstances, the court finds that the Air Force retained control of the area where Eric fell.

Where a landlord has retained control, "he has the duty to maintain the common areas in a reasonably safe condition in order to avoid liability for injury to tenants or their guests." *Hancock v. Alabama Home Mortgaging Co.,* 393 So.2d 969, 970 (Ala.1981). Furthermore, "[k]nowledge, either actual or constructive, must be present in order to hold the landlord liable in a retained control situation." *Osborn v. Brown,* 361 So.2d 82, 88 (Ala. 1978).

Here, the Air Force was fully aware of the defective railing and the serious safety hazard it posed.[1] The Air Force had on several prior occasions attempted to repair the railing. The Air Force's negligence is apparent because the railing kept falling out after each attempted repair. Furthermore, the Kennedys specifically complained to the Air Force about the missing railing just before Eric's fall, and the Air Force negligently failed to respond to the complaint.[2]

1. A finding of constructive knowledge is also appropriate here. As already stated, since the Air Force retained control, it had a duty to maintain the area of the railings in a reasonably safe condition. Here, the defective railing was open and readily apparent. The Kennedys had observed it on many occasions, and their neighbors were aware of it. The court finds that under these circumstances the Air Force should have been aware of the defective railing in the general and reasonable exercise of its duty to maintain the area of the railing in a reasonably safe condition.

More specifically, in *Coggin v. Starke Brothers Realty Company, Inc.,* 391 So.2d 111, 112–113 (Ala.1980), the Alabama Supreme Court reaffirmed the adoption of the Restatement (Second) of Torts, § 360 (1965), which provides: A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risks involved therein and could have made the condition safe.

For reasons given above, this court finds that in the exercise of reasonable care, the Air Force could have discovered the defective railing and the unreasonable risk posed by it and could have made the condition safe.

2. The evidence reflected a factual dispute over whether the Kennedys had reported the defective railing just before Eric fell and whether on prior occasions the Air Force had tried to fix it. Sergeant and Mrs. Kennedy testified that they had reported it just before Eric fell and that on prior occasions the Air Force had attempted to fix the railing after they had filed complaints. The Air Force, on the other hand, offered evidence that there was no record of the Kennedys' having ever reported the defect. However, upon close scrutiny by the court, this evidence appears flawed.

The log of complaints admitted in evidence purported to document the details of every re-

### B.

Finally, even if the Air Force had not retained control of the garage area and was under no general duty to repair the railings, the United States would still be liable. As already observed, where a landlord, "even though under no duty to make repairs, voluntarily undertakes to do so, he is liable for injuries proximately caused by negligence in making the repairs so as to render the premises dangerous to the life or limb of those rightfully occupying the premises." *Baker v. Wheeler, Lacey & Brown, Inc.*, 272 Ala. 101, 128 So.2d 721, 723 (1961). Here, the Air Force voluntarily undertook to provide for the repair of the railings and, accordingly, undertook the duty to assure that the repairs were not done negligently. Nevertheless, as previously observed, the Air Force negligently repaired the defective railing on prior occasions. Furthermore, just before Eric's fall, the Air Force negligently failed to respond to the Kennedys' request to repair the railing.[3]

### IV.

■ In conclusion, the Air Force breached its duty of care to Eric, and this breach was the proximate cause of Eric's fall. The United States is therefore liable to Eric for any damages suffered from his fall.[4]

Accordingly, it is the ORDER of the court that judgment be and it is hereby entered in favor of the plaintiff and against the defendant on the issue of liability.

It is further the ORDER of the court that the issue of damages be and it is hereby set for trial on May 23, 1985, at 8:30 a.m. in the fourth floor courtroom of the federal courthouse in Montgomery, Alabama.

---

quest for repairs between October 1, 1980, and May 1, 1981, and showed no request from the Kennedys to repair the railing. Although there is no reason other than occasional deviations from chronological order to doubt that the log contains every request, the log entries appear to be incomplete. Separate records of individual complaints also admitted in evidence, when compared to their corresponding log entries, show that the log entries are only abbreviations of complaints. Thus, if an occupant reported several problems at once, the log might show only one. The log does indicate that the Kennedys reported many problems over the five months covered. Therefore, that the railing is not mentioned does not mean that they did not report it. On this basis, the court credits the Kennedys' testimony that they had reported the defective railing on several occasions before Eric fell through it.

3. It appears that where one voluntarily undertakes to make repairs there may be a duty of care even in the absence of a landlord-tenant relationship. However, in light of the presence of such a relationship here, the court need not reach this issue.

4. The United States contends that, assuming there was a duty and a breach thereof, it is not liable under the independent contractor exception. *See Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *McCorkle v. United States*, 737 F.2d 957, 961 n. 3 (11th Cir.1984). This contention is meritless. The missing railing was considered an "urgent problem" and under the contract with the private contractor was the responsibility of military personnel rather than the private contractor. The court finds that on prior occasions the Kennedys reported the defective railing, and it was the military personnel rather than the private contractor who negligently repaired the railing. The court further finds that just before Eric's fall, the Kennedys again complained about the defective railing to military personnel, and that it was military personnel that negligently failed to respond to the complaint.