These consolidated cases involve appeals under the provisions of § 40-2-22, Ala. Code 1975, of final assessments of gross receipts taxes entered against Telnet Corporation and others by the State Department of Revenue (department). The trial court held that the taxpayers were entitled to a refund for the years 1988 and 1989 and that the assessment against Telemarketing Corporation of Louisiana (Telemarketing) for 1986 and 1987 was proper. The department appeals that portion of the trial court's order which grants a refund to the taxpayers, and Telemarketing appeals that portion of the order which upheld the 1986 and 1987 assessment against it. We affirm.
The dispositive issues are whether the trial court erred in holding that the department did not have the authority to ignore a clear mandate of the legislature as expressed in Act No. 88-542, now codified at § 6-5-605, Ala. Code 1975, and in holding that money paid by Telemarketing to long distance carriers was not revenue "divided with another carrier" as provided in § 40-21-58, Ala. Code 1975.
The record reveals that the taxpayers are telephone toll resale carriers authorized to do business in Alabama and certificated to furnish long distance telecommunications service in Alabama. They do not provide local exchange telephone service. The complaints of the taxpayers state that, at the appropriate time, they filed tax returns reporting no taxable income based on no local exchange service revenues and that they were told by the chief of the franchise tax division that the department considered § 6-5-605, which limited the gross receipts tax in § 40-21-58 to companies that provide local exchange service, to be unconstitutional.
The parties stipulated to the following facts: that Ernest Broadhead, Chief of the Franchise Tax Division, would testify that the department's interpretation of § 40-21-58, as amended by Act No. 86-431, is that the tax applies to gross receipts without any deduction for money paid to underlying carriers and that this results in all receipts being taxed, with no double taxation, and no receipts being untaxed. He also would testify that the department cannot determine at this time whether AT 
T reported receipts on a "gross gross" basis or on a "net gross" basis and that an assessment had not been entered against MCI. "Gross gross" and "net gross" were defined by illustrative examples as follows:
 "If the reseller collects $1.00 from a customer, but pays AT T $.50 and South Central Bell $.20 for their participation in providing the service, 'gross gross' means that the gross receipts license tax (GRLT) due from the reseller is based on the entire $1.00. 'Net gross' means that the reseller pays tax only on the $.30."
Responses to letters sent by the department indicate that MCI's gross receipts license tax return was prepared on a "net gross" basis, U.S. Sprint's return apparently was prepared on a "gross gross" basis, and AT T did not respond to the letter. Divestiture of the Bell system took place on January 1, 1984. Section 40-21-58 was amended in 1986. *Page 471 
On appeal the department contends that, although § 6-5-605
has the effect of exempting the long distance services provided by the resellers (here, the taxpayers) and other telephone companies from the gross receipts tax contained in § 40-21-58, § 6-5-605 appeared to the department to be unconstitutional and violates the provisions of article IV, § 45, of the Constitution of Alabama of 1901.
In its order, the trial court concluded that "the Alabama Department of Revenue does not have the authority to unilaterally declare or contend that an act passed by the Alabama Legislature was passed in an unconstitutional or otherwise improper manner and, pursuant to that unilateral interpretation, ignore the clear mandate of the Alabama Legislature." It further concluded that Act No. 88-542, now codified at § 6-5-605, has not been declared unconstitutional by any Alabama court. We agree.
Although the parties hint of a constitutional issue at the trial level, it was not raised in the pleadings; evidence as to the issue is not in the record, and the court did not rule on it; therefore, appellate review of this issue is foreclosed.King v. Reid, 428 So.2d 611 (Ala. 1983); Cooper v. Green,359 So.2d 377 (Ala. 1978); Williams v. State, 504 So.2d 282
(Ala.Civ.App. 1986).
Section 40-21-58 provides as follows:
 "In addition to all other taxes imposed by this title, there is hereby levied a license or privilege tax upon each person engaged in the telephone business which includes resellers in the state of Alabama for the privilege of engaging in such business, . . . and shall be in a sum equal to two and one-half percent of the total gross receipts retained by such telephone company and not divided with another carrier, excluding revenues from sale for resale. . . ."
(Emphasis added.)
Section 6-5-605 states that "for purposes of sections 40-8-1,40-21-50 and 40-21-58, as amended, the terms 'utilities' and 'public utility,' as applied to telecommunications, 'telephone company,' and 'telephone business' mean the provisioning of local exchange services."
Clearly, § 6-5-605 alters § 40-21-58 so that the tax levied therein is limited to those provisioning local exchange services; therefore, we find that the taxpayers are relieved from the responsibility of paying the tax imposed by §40-21-58.
In its appeal Telemarketing contends that the amended wording of § 40-21-58 permits reducing Telemarketing's gross revenues by the amount paid to other carriers for their part in the provision of the services for the purpose of computing the gross receipts license tax. This issue remains pertinent for 1986 and 1987, as this was prior to the implementation of §6-5-605; therefore, the tax imposed by § 40-21-58 was not limited to "the provisioning of local exchange services."
As to this issue, the trial court concluded that "[monies] paid by Telemarketing Corporation of Louisiana to long distance carriers like AT T and local exchange companies like South Central Bell are not revenues 'divided with another carrier' as provided in Ala. Code § 40-21-58 (Cum.Supp. 1989). The Court finds that such payments are costs of doing business, similar to cost of goods sold and, therefore, do not reduce the gross receipts of Telemarketing Corporation of Louisiana for purposes of the gross receipts license tax." Here, we also agree.
The testimony regarding the payment for underlying toll services that are resold, in pertinent part, indicates as follows:
 "A reseller typically pays for underlying services on a tariffed basis. . . . A reseller would typically be charged by an underlying facilities-based carrier for WATS service based upon the number of hours of calling terminated within a given band in a given month. In effect, the reseller is buying a discounted bulk service (i.e. WATS) in order to produce a service priced on a per-call basis (i.e. ordinary toll or long-distance service).
 "Payment by the reseller for the underlying service is not dependent on the revenues derived by the reseller, but is dependent upon usage of the underlying service. The reseller is obligated to pay *Page 472 
the underlying carrier whether or not the reseller derives any revenue. Resellers must pay underlying carriers in the same manner as other large users, such as large corporations.
 "Payment by resellers for private lines is not based upon either use of the lines or revenue derived by the reseller. Hence, the reseller simply pays for the private lines based on either a tariffed price, a contracted market price, or a barter agreement."
We find that this testimony indicates that there is no division of revenue; rather, payment for private lines is dependent on usage of the service, not the revenue received. Therefore, we further find that the monies paid to other carriers were not revenues "divided with another carrier" as provided in § 40-21-58, but were costs of doing business and may not be deducted by Telemarketing from its total gross receipts for 1986 and 1987.
As a second issue, Telemarketing contends that the department has been inconsistent in its interpretation of § 40-21-58
wherein it allows the exclusion of revenues divided with another carrier from taxation. It cites two cases in support of its contention that the excess taxes due to the "gross gross" charges should be refunded because other telephone companies within the same class have not been audited and required to pay taxes on a "gross gross" basis. However, we do not find the cases to stand for Telemarketing's proposition.
In Henry v. Shevinsky, 239 Ala. 293, 195 So. 222 (1940), a statute was challenged on constitutional grounds because certain license charges did not expressly include cities between 10,000 and 15,000 in population. Although the statute was not found to be unconstitutional, it was challenged because of its own omission of certain cities and not because of the application of the statute. State v. Hunt Oil Co., 49 Ala. App. 445,453, 273 So.2d 207, 213 (Ala.Civ.App. 1973), is cited for the statement that "[a] tax to be equal and uniform must operate alike upon all within the class." However, "unavoidable inequalities which are due only to inequalities in business conditions and activities are not sufficient to render a tax statute invalid." 84 C.J.S. Taxation § 23 (1954) (quoted with approval in Hunt).
We find that § 40-21-58 does operate equally upon all within the class. Additionally, the department assures this court that it intends to apply the interpretation uniformly to all taxpayers and that audits had not been conducted yet to determine the deductions taken; therefore, we find that this issue does not affect the holding of the trial court.
Based on the above these consolidated cases are due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.