ROBERTSON, Presiding Judge.
AT & T Communications of the South Central States, Inc. (AT & T), filed a complaint in the Montgomery County Circuit Court, seeking to recover telephone gross receipts license taxes for the years 1989 and 1990. The complaint alleged that the taxes, in the amount of $4,614,224.03, had been excessively, invalidly, and illegally levied and demanded from AT & T; and that the taxes had been paid by AT & T under protest. The State Department of Revenue (Department) filed an answer, admitting that AT & T had paid taxes in the amount of $4,614,224.03 under protest, but denying that the taxes were excessive, illegal or invalid.
AT & T and the Department filed a joint stipulation of facts. Thereafter, AT & T filed a motion for summary judgment; subsequently, the trial court conducted a nonjury trial and heard testimony from three witnesses. Thereafter, the case was submitted to the trial court on the joint stipulation of facts, the in-court testimony, and documentary evidence.
The trial court entered a well-written order which stated:
“This action was brought pursuant to the provisions of Alabama Code, § 41-1-11 for the recovery of Alabama telephone gross receipts license taxes levied under Alabama Code, § 40-21-58 which were paid under protest by Plaintiff, AT & T Communications of the South Central States, Inc. (hereinafter ‘AT & T’) for tax years 1989 and 1990.
“AT & T, a long distance carrier, attempted to deduct from its total gross *773 receipts for tax years 1989 and 1990 those access charges that were paid to Local Exchange Carriers (hereinafter ‘LECs’) which were incurred in order to initiate and complete a long distance call. The Alabama Department of Revenue (hereinafter ‘Department’) denied this exclusion on the grounds that the local access charges incurred by AT & T were a cost of doing business and were not revenues divided with another carrier and, as such, should be included in their total gross receipts. The Department further contends that the local access charges fall within the category of being a cost of doing business or revenue from the resale by long distance carriers. These charges are not in-cludable in the gross receipts of LECs but includable in the gross receipts of AT & T. AT & T contends that the local access charges they incur in commencing and completing a long distance intrastate telephone call are revenues divided with another carrier, i.e., with the local exchanges.
[[Image here]]
“The issue involved in this case is whether AT & T is legally entitled to deduct local access charges from its total gross receipts as constituting receipts divided with another carrier or if such charges are properly included in gross receipts as a cost of doing business.

“FINDINGS OF FACT

“This matter came before the Court on testimony from both sides and upon joint stipulation of facts entered into by the parties. This Court adopts and references those joint stipulations of fact and incorporates them within this order as if fully set out herein.
“After an ore tenus hearing, this Court finds that AT & T incurs access charges on intrastate long distance calls for the origination and termination of all long distance calls. Evidence before this Court establishes that AT & T is charged and pays for those access charges whether it receives any receipts at all for that call.
“An example of these access charges was presented at trial by reference to a long distance call from Montgomery to Birmingham. This would involve the origination of the call by South Central Bell in Montgomery which would then turn the long distance aspect of the call over to AT & T. Finally, the long distance call would terminate by a connection with South Central Bell in Birmingham. Evidence established at trial revealed that receipts for long-distance calls are retained by AT & T. Thereafter, AT & T receives a bill for local access charges in originating and terminating a long-distance call. The amount that AT & T is charged from a local exchange does not vary with the time of day or day that it is incurred whereas the total amount that AT & T charges its customer and retains does vary with the time of day and day that it is placed. Additionally, a customer is not charged for a busy signal, no answer call or wrong number, however, AT & T is charged an access charge for the origination and termination of that call.
“Access charges are considered to be usage sensitive from the standpoint that AT & T incurs local access charges based on the length of the call. In the example set out above, AT & T would incur access charges from South Central Bell even if no one picked up the phone in Birmingham due to the fact that they had to access South Central Bell in order to originate and complete the call. The imposition of access charges are not dependent upon whether AT & T receives any revenue from an attempted call.
“The facts as established at trial show that the revenues collected by South Central Bell for long distant calls are remitted to AT & T along with an itemized statement from South Central Bell for the access charges incurred by AT & T during the subject period. AT & T then remits payment to South Central Bell for the charges set forth on the invoice. The Court finds that these charges are a cost of doing business and do not constitute revenues being divided with another carrier.
“Based on the above, the Court finds that the payment for access charges is dependent on usage of the service by AT & T, not the revenue it receives. Therefore, the monies paid to other carriers by AT & *774 T for local access charges are not revenues ‘divided with another carrier,’ as provided in § 40-21-58, but are costs of doing business and may not be deducted by AT & T from its total gross receipts for tax years 1989 and 1990.

“CONCLUSIONS OF LAW

“The Court finds that the operative facts found in the instant case are very similar to those set out in State Department of Revenue v. Telnet Corporation, 595 So.2d 469 (Ala.Civ.App.1991). AT & T incurs and pays for access charges on a usage sensitive basis, i.e., on usage of the service. Payment for these access charges is not dependent on the revenue received. As noted above, all parties agreed that AT & T would incur charges merely by accessing South Central Bell’s lines even if the call was not completed and AT & T received no revenue from the attempted call.
“It is this Court’s opinion and conclusion that this case falls within the purview of the Telnet decision. That Court concluded that monies paid to local exchange companies like South Central Bell were not ‘revenues divided with another carrier.’ The Court in Telnet went further and noted ‘... that such payments are costs of doing business, similar to costs of goods sold and, therefore, do not reduce the gross receipts of Telemarketing Corporation of Louisiana for purposes of the gross receipts license tax.’
“This Court further finds in construing § 40-21-58 that the Legislature intended that the cost of doing business, i.e., access charges, is included within the gross receipts of a utility such as AT & T since the tax levied is on the basis of gross receipts. The fact that AT & T is a facilities based carrier does not change the legal effect of the access fees here involved being costs of doing business and not revenues divided with another carrier.
“The Court specifically finds as a matter of law that long distance carriers, such as AT & T, are not entitled to deduct the cost of such charges from their taxable gross receipts as those local access charges are a cost of doing business in originating and terminating a long distance call and are not revenues divided with another carrier.”
A motion for a new trial was denied and AT & T appeals.
The issue on appeal is whether the access charges paid by AT & T to local exchange carriers in 1989 and 1990 constitute a division of revenue under § 40-21-58, Ala.Code 1975, and as such are deductible from AT & T’s Alabama telephone gross receipts license tax base; or whether the access charges are a cost of doing business in Alabama so that Department of Revenue v. Telnet Corp., 595 So.2d 469 (Ala.Civ.App.1991), is applicable.
All of the facts set out above in the trial court’s order were either stipulated to by AT & T and the Department or proven by in-court testimony and documentary evidence. Prior to 1986, § 40-21-58 provided:
“In addition to all other taxes imposed by this title, there is hereby levied a license or privilege tax upon each person engaged in the telephone business in the state of Alabama ... equal to two and one-half percent of the total gross receipts of such telephone company from all the intrastate business within the state of Ala-bama_” (Emphasis added.)
After § 40-21-58 was amended by Act No. 86-431 of the Alabama Legislature, it provided:
“In addition to all other taxes imposed by this title, there is hereby levied a license or privilege tax upon each person engaged in the telephone business which includes resellers in the state of Alabama ... equal to two and one-half percent of the total gross receipts retained by such telephone company and not divided with another carrier, excluding revenues from sale for resale, from all the intrastate business within the state of Alabama....” (Emphasis added.)
Section 40-21-58 was repealed prospectively by Act No. 92-623 of the Alabama Legislature.
AT & T timely filed with the Department its 1989 and 1990 2.5% Telephone Gross Receipts License Tax Returns. During 1989, AT & T had total operating revenues of $306,983,080.82. On its 1989 return, AT & T *775 deducted, among other things, $75,409,737.00, which amount represented the intrastate carrier access charges paid by AT & T to local exchange carriers. During 1990, AT & T had total operating revenues of $303,572,-459.90. On its 1990 return, AT & T deducted, among other things, $73,385,764.00, which amount represented the intrastate carrier access charges paid by AT & T to local exchange carriers. On August 14, 1992, AT & T paid the Department, under protest, alleged deficiencies in telephone gross receipts license taxes of $4,614,224.03 claimed by the Department to be due under the 1989 and 1990 returns. Said deficiencies resulted from the Department’s denial of AT & T’s deduction for intrastate carrier access charges paid by AT & T to local exchange carriers.
Mr. James Mertz, a manager in State Government Affairs with AT & T, testified that before the 1984 court-ordered divestiture of AT & T,[1] there was a process of separations, settlements, and divisions of revenues whereby the revenue for a telephone call was divided between AT & T and any local exchange carrier which was needed to complete the call. On January 1, 1984, the process of separations, settlements, and divisions of revenues was replaced by a system of access charges. Since 1984, there has been an originating and terminating local exchange carrier, which imposes an access charge, participating in each long distance call. Access charges are set by the Alabama Public Service Commission (PSC).
Through the system of access charges, the local exchange carriers involved in a long distant call received an access charge for that call. Access charges were paid by AT & T to the local exchange carriers for long distant calls regardless of whether AT & T received any revenue from those calls, e.g., incomplete calls, busy signals, wrong numbers, etc. Also, AT & T paid the access charge rate set by the PSC regardless of the rate[2] AT & T charged its customers for the completed and billable calls.
The Department argues, and the trial court found, that this court’s prior decision in Telnet is controlling. In Telnet, this court held that the money paid by Telnet to long-distance carriers and local exchange carriers was not a division of revenue, but rather was a cost of doing business. Telnet’s obligation to pay was “dependent on usage of the service, not the revenue received.” 595 So.2d at 472.
The access charges in this case were calculated or based upon usage by AT & T regardless of whether the call was completed. Unless a call was completed, AT & T did not and could not charge its customer for that call; consequently, no revenue was received by AT & T for an incomplete call. Therefore, AT & T’s obligation to pay the access charges was “dependent on usage of the service, not the revenue received.” Id. at 472.
Based on the foregoing, we find that the access charges were a cost of doing business and not a division of revenue. Id. Consequently, the judgment of the trial court is due to be affirmed.
AFFIRMED.
THIGPEN, YATES, MONROE, and CRAWLEY, JJ., concur.

. See United States v. American Tel. & Tel. Co., 552 F.Supp. 131 (D.D.C.1982), whereby the United States District Court for the District of Columbia ordered the nationwide break-up of the Bell telephone system. The order was implemented January 1, 1984, when AT & T divested itself of its former local exchange carriers, such as South Central Bell. The Court specifically provided that charges for exchange access would not discriminate against any carrier or other customer, and that access charges would replace the division of revenues process used to allocate revenues to a Bell operating company for exchange access.

. As the trial court stated above, the amount AT & T charged its customers varied with the time of day and the day that the call was made.